```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
AOSTA SHIPPING CO. LTD.,                 :
                                         :
               Plaintiff,                :
                                         :        08 Civ. 7649(JSR)
           -v-                           :
                                         :        OPINION AND ORDER
OSL STEAMSHIP CORP., et al.,             :
                                         :
               Defendants.               :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

On August 29, 2008, the Court, on the ex parte application of plaintiff Aosta Shipping Co. Ltd., issued an order of maritime attachment and garnishment restraining defendants' property in accordance with Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure. The attachment was premised on plaintiff's claim against primary defendant OSL Steamship Corporation ("OSL") for alleged breach of a New York Produce Exchange Time Charter Agreement dated November 19, 2007, a claim presently being arbitrated in London. OSL thereafter posted a surety bond for the full amount of plaintiff's claim, and, accordingly, on September 19, 2008, the Court entered an Order that released such funds of OSL as had been attached to that point. The attachment Order nevertheless remained in place as to other defendants alleged to be OSL's alter egos. OSL now moves to vacate the attachment in its entirety on the basis that plaintiff's claim amounts to a contingent indemnity claim that does not constitute a valid admiralty claim.

Courts in this Circuit have consistently held that Rule B attachments based on contingent indemnity claims for breach of a

charter party are premature because they are unripe under English law (which the parties agree here governs), and thus fail to state a proper maritime claim.  See, e.g., Bottiglieri di Navigazione SpA v. Tradeline LLC, No. 07-0850-cv, 2008 U.S. App. LEXIS 20028, at *2 (2d Cir. Sept. 17. 2008) (affirming district court's finding "that plaintiff's claim for indemnity against defendant was unripe (and therefore not a valid prima facie claim) because plaintiff had yet to incur liability to the third-party owner of the vessel in question and, under English law, a claim for indemnity does not accrue until a plaintiff has actually made a payment to the third party"); Precious Pearls, Ltd. v. Tiger Int'l Line Pte Ltd., 07 Civ. 8325, 2008 U.S. Dist. LEXIS 58453, at *5-6 (S.D.N.Y. July 31, 2008) ("contingent indemnity claims for breach of a charter party fail to state a valid prima facie maritime claim under English law"); Sonito Shipping Co., Ltd. V. Sun United Maritime Ltd., 478 F. Supp. 2d 532, 540, 543 (S.D.N.Y. 2007) (same).

In Sonito, for instance, plaintiff ship owner entered into a maritime contract with defendant charterer.  478 F. Supp. 2d at 534. At the discharge port, it was discovered that the cargo was damaged, and the cargo receivers asserted a claim against the plaintiff.  Id. Plaintiff subsequently alleged that the charterer was ultimately liable for the claims asserted against it, and obtained a Rule B attachment.  Id.  The court held that plaintiff's claim, which was governed by English law and by the terms of the NYPE Interclub Agreement ("the ICA"), was premature, and would not accrue until

2

plaintiff satisfied a condition precedent under the ICA, viz., to settle the cargo claim with the cargo receivers before bringing a claim against the charterer.  Id. at 542-44.

Similarly, here plaintiff ship owner entered into a 60 day time charter for its ship with defendant charterer, see Verified Complaint ("Compl.") ¶ 6, cargo receivers lodged claims against plaintiff at the discharge port for damaged goods, id. ¶¶ 12-13, and plaintiff now alleges that defendant is ultimately liable for the claims asserted against plaintiff, id. ¶ 17, even though plaintiff has not yet paid or otherwise settled the cargo receivers' claim.  Moreover, as in Sonito, the parties' agreement incorporated the ICA by Rider, see Declaration of Charles E. Murphy, Esq. Ex. 2 at Clause 42, which provides that apportionment "shall only be applied to Cargo Claims where: . . . [t]he claim has been properly settled or compromised and paid." Id. Ex. 3 at 4(c).  Accordingly, because plaintiff has yet to incur any liability to the cargo receivers, plaintiff's claim is not ripe under the ICA and English law, and thus cannot form the basis for a valid Rule B attachment order.[1]

---

[1] At oral argument, for the first time, plaintiff's counsel hinted at the need to let the London arbitrator decide whether plaintiff's claim has accrued.  But a preliminary determination of this issue by the Court is necessary to determine whether the extraordinary preliminary relief of an attachment is warranted.  Of course, if and when English arbitrators determine that, under English law, plaintiff's claim has accrued, plaintiff may bring an indemnity claim against defendant in this Court, which, at that time, would be a cognizable basis for a Rule B attachment.

3

Plaintiff argues that its claim is not for indemnification but instead for defendant's alleged breach of its charter party obligations and maritime tort duties.  Plaintiff's argument in this respect is directly contradicted, however, by its Verified Complaint, which alleges, <u>inter alia</u>, that plaintiff has been "forced to incur various costs and expenses in responding to and/or defending the claims asserted by the cargo receivers," and that despite its demand for defendant "to assume the defense of the cargo claims and/or provide security for same, [defendant] has failed, neglected and/or otherwise refused to do so."  Compl. ¶¶ 17-18.  Thus, on the face of plaintiff's Complaint, it is clear that if the cargo receivers' claim is resolved in plaintiff's favor, there would not be any basis for plaintiff to recover from defendant.  See <u>Bottiglieri Di Navigazione SPA v. Tradeline LLC</u>, 472 F. Supp. 2d 588, 590-91 (S.D.N.Y. 2007), <u>aff'd</u>, 2008 U.S. App. LEXIS 20028 (refusing to treat plaintiff's claim as arising from a breach of the charter party contract, because based on the allegations contained in the complaint, "which trace[d] the bulk of the monetary claim made against defendant to the damages claimed by the Owner," plaintiff's claim was for indemnity and thus not ripe).

At oral argument plaintiff's counsel also noted that plaintiff has claims for damages separate and apart from those arising from the cargo receivers' claims, see Tr. 1/20/09, but the Verified Complaint makes clear that the only damages plaintiff expects to recover from defendant in London arbitration are (1) costs relating to cargo receivers' claim against plaintiff (including various costs and

4

expenses arising from the defense of that claim); (2) estimated interest on those costs; and (3) estimated attorneys' fees. See Compl. ¶¶ 15, 17, 20-21.  Plaintiff's claim thus sounds in indemnification, and is thereby unripe.

Plaintiff also notes that it "was required to provide the cargo claimants with security" in order to obtain the release of its vessel, Compl. ¶ 15, thus giving rise to a ripe maritime claim for damages that plaintiff has already sustained.  The posting of security, however, is not the equivalent of a compromise or settlement of a claim, and, without more, does not ripen a claim for indemnification.  See Sanko Steamship v. China Nat'l Chartering Corp., 536 F. Supp. 2d 362, 366-67 (S.D.N.Y. 2008) (vacating attachment despite posting of security).  Plaintiff points to Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., which held that plaintiff, who previously was required to post security, had a "direct interest in securing its claim of indemnity against" defendant, and that, "[i]n effect," plaintiff "had to prepay a debt owed by it."  485 F. Supp. 2d 399, 404 (S.D.N.Y. 2007).  That holding, however, was premised in part on the fact that the plaintiff in Navalmar had already obtained an interim award in "an arbitral hearing making findings of fact favorable to plaintiff's case."  Id. at 405.  Here, by contrast, there is no indication that arbitration proceedings have even begun, thus rendering plaintiff's posting of security irrelevant to the question of whether its claim has, in fact, ripened.

Accordingly, for all of the foregoing reasons, the maritime attachment is hereby vacated in its entirety. The Clerk of the Court is directed to close document number 8 on the Court's docket, and to close the case.

SO ORDERED.

                                        JED S. RAKOFF, U.S.D.J.

Dated:     New York, New York
             January 26, 2009